```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------x
LAGUERRE LENSENDRO,            :
                               :
          Plaintiff,           :
                               :
v.                             :
                               : Civil No. 3:24-cv-1760 (AWT)
                               :
ANDREW M. YOUNG, CAPITAL ONE   :
FINANCIAL CORPORATION, and BOND:
DOE,                           :
                               :
          Defendants.          :
-------------------------------x
```

## RULING ON MOTION TO DISMISS

Pro se plaintiff Laguerre Lensendro ("Lensendro") brings a two-count complaint against defendants Capital One Financial Corporation ("Capital One"), Capital One's Chief Financial Officer Andrew M. Young ("Young"), and Bond Doe, "the surety company that issued a bond covering Capital One Financial Corporation and/or Andrew M. Young for their legal and financial obligations." Am. Compl. (ECF No. 15) ¶ 10. Count I of the Amended Complaint is a claim for violation of the Equal Credit Opportunity Act (the "ECOA"), codified as amended at 15 U.S.C. §§ 1691 et seq.. Count II of the Amended Complaint is a claim for violation of the Truth in Lending Act (the "TILA"), codified as amended at 15 U.S.C. §§ 1601 et seq..

The defendants have moved to dismiss the Amended Complaint for, inter alia, failure to state a claim upon which relief can

be granted. For the reasons set forth below, the motion to dismiss is being granted.

## I. FACTUAL ALLEGATIONS

The court must accept as true the factual allegations in the Amended Complaint for purposes of testing its sufficiency. See Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997). It contains the following allegations.

"On or about August 13, 2024, Plaintiff attempted to apply for a variety of open-end consumer credit plans offered by Capital One by completing an online pre-approval form." Am. Compl. ¶ 11. "Capital One subsequently issued a letter to Plaintiff, dated August 13, 2024, informing him that his application [for several credit cards] was denied based solely on his income, stating that his 'income is insufficient for amount of credit requested.'" Id. ¶ 12. According to the plaintiff, as "a direct and foreseeable consequence" of this conduct, "Plaintiff has suffered identifiable harm, including lost opportunities to access credit and the inability to acquire property". Id. ¶ 4.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id.

Additionally, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). Nevertheless, pro se status "does 'not exempt a party from compliance with relevant rules of procedural and substantive law'". Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). "[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." Caidor v. Onondaga County, 517 F.3d 601, 605 (2d Cir. 2008) (italics, internal quotation marks, and citation omitted).

**III. DISCUSSION**

With respect to the plaintiff's claim under the ECOA (Count I), the defendants argue that the Amended Complaint does not adequately allege the necessary elements of an ECOA violation, including that the plaintiff was discriminated against on a prohibited basis and that he was qualified for the credit he sought. See Mem. in Support of Mot. to Dismiss (ECF No. 18-1) ("Defs. Memorandum") at 8. With respect to the plaintiff's claim under the TILA (Count II), the defendants argue that the plaintiff "fails to plead the existence of any loan or credit transaction with Defendants," which, according to the

defendants, "is fundamental to a TILA claim." Id. The defendants also argue that the plaintiff "has not named proper parties" and has failed to adequately allege that the named defendants are creditors within the meaning of the ECOA and the TILA. Id. at 8-9. According to the defendants, "it is a matter of public record that Capital One Financial is merely a holding company and does not issue credit to consumers", and "the Amended Complaint is utterly silent concerning Young's alleged involvement with Plaintiff". Id.

Because the Amended Complaint should be dismissed on the basis of the first two arguments, the court does not address arguments with respect to whether Capital One and Young are proper defendants in this action.[1]

---

[1] The court notes that the provisions of the ECOA and the TILA that the plaintiff seeks to enforce impose liability on creditors only. See 15 U.S.C. §§ 1631(a), 1691(a). Each act has its own specific definition of that term. See 15 U.S.C. § 1691a(e) (the ECOA's definition of "creditor"); 15 U.S.C. § 1602(g) (the TILA's definition of "creditor"). See also 12 C.F.R. §§ 202.2(l), 226.2(a)(17).

Under both the ECOA and the TILA, a creditor may be a natural person or an organization. See 15 U.S.C. § 1602(e); 15 U.S.C. § 1691a(f). However, it is not the case that all individual agents of a creditor are creditors themselves. See, e.g., Rothermel v. U.S. Bank Nat'l Assoc., No. 3:23-cv-1329 (SVN), 2025 WL 950718, at *14-15 (D. Conn. Mar. 28, 2025) ("Because SPS, the loan servicer for the creditor U.S. Bank, and Attorney Cheverko, an attorney who represented the creditor U.S. Bank in the Foreclosure Action, are not 'creditors' and thus not subject to TILA, Plaintiff's TILA claim against them must fail.").

**A. Count I: ECOA Claim**

The ECOA provides in relevant part that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction":

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);

(2) because all or part of the applicant's income derives from any public assistance program; or

(3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a). Plaintiffs seeking to prove a claim under the ECOA may do so "in a manner similar to that used in Title VII discrimination cases". Gross v. U.S. Small Bus. Admin., 669

---

A plaintiff bringing a claim under either act must satisfy his burden of adequately alleging -- and eventually proving -- that the named defendants are creditors as defined in the relevant statute. See, e.g., Vincent v. The Money Store, 736 F.3d 88, 105-06 (2d Cir. 2013) (affirming summary judgment in favor of defendant where the evidence showed that the defendant was "not 'the person to whom the debt arising from the consumer credit transaction [was] initially payable on the face of the evidence of indebtedness,' and is therefore not a 'creditor' under TILA" (quoting 15 U.S.C. § 1602(g)); Cohran v. Ne. Mortg., LLC, No. 3:06-cv-1131 (AWT), 2007 WL 2412299, at *3-4 (D. Conn. Aug. 21, 2007) (determining, at the summary judgment stage, that the "defendant was a 'creditor' for purposes of the ECOA" where he "participated 'in a credit decision'"); McAnaney v. Astoria Fin. Corp., 665 F.Supp.2d 132, 143 (E.D.N.Y. 2009) ("[T]he bank holding company defendants should be dismissed from the instant [TILA claim] because there is no evidence indicating their direct involvement, and there is insufficient record evidence from which a finder of fact could reasonably conclude that the corporate veil should be pierced under an alter ego theory of liability.").

F. Supp. 50, 52 (N.D.N.Y. 1987), aff'd, 867 F.2d 1423 (2d Cir. 1988). A plaintiff bringing such a claim must set forth allegations from which the court may reasonably infer (1) that he or she "belongs to a minority or protected class" or was discriminated against on another prohibited basis, (2) that he or she "applied for and was qualified for a loan," (3) that despite his or her "qualifications, [he or] she was rejected," and (4) that others "of similar credit stature were given loans, or were treated more favorably than plaintiff in the application process." Id. at 53.

The regulations interpreting the ECOA identify several reasons creditors may legitimately deny access to credit, including income level. The regulations state that "a creditor may consider the amount and probable continuance of any income in evaluating an applicant's creditworthiness", as well as an applicant's "credit history". 12 C.F.R. §§ 202.6(b)(5)-(6). See also Powell v. Am. Gen. Fin., Inc., 310 F. Supp. 2d 481, 488 (N.D.N.Y. 2004) (noting that creditors' "reliance on indicators of creditworthiness, such as credit histories and income levels of applicants," does not violate the ECOA); Jones v. Ford Motor Credit Co., No. 00-cv-8330 (LMM), 2002 WL 88431, at *4 (S.D.N.Y. Jan. 22, 2002) ("In evaluating whether to extend credit, 'a creditor may consider any information obtained, so long as the information is not used to discriminate against an applicant on

a prohibited basis.'" (quoting 12 C.F.R. §§ 202.6(a))); Gross, 669 F. Supp. at 54-55 ("[T]he defendants rightfully considered the plaintiff to be a credit risk" based on their consideration of her "financial statements", "income", and current "debt").

Here, the plaintiff claims that he was discriminated against in violation of the ECOA because he was denied the opportunity to apply for a credit card on the basis of his income. Nowhere in the Amended Complaint does the plaintiff allege facts that could show that he was denied credit on some prohibited basis. The plaintiff does not allege that he was denied credit based on any of the characteristics enumerated in 15 U.S.C. § 1691(a)(1) -- namely, "race, color, religion, national origin, sex or marital status, or age" -- nor that his "income derives from any public assistance program" and that he was denied credit for that reason. 15 U.S.C. § 1691(a)(2). See, e.g., Henry v. Flagstar Bank, FSB, No. 16-CV-1504 (JMAAKT), 2017 WL 11886155, at *4 (E.D.N.Y. Aug. 28, 2017) (granting dismissal where "plaintiffs fail[ed] to allege any factual circumstances that give rise to an inference of discrimination on the basis of any protected class"); Burrell v. State Farm Fire & Cas. Co., No. 00-Civ.-5733 (JGK), 2001 WL 797461, at *10 (S.D.N.Y. July 12, 2001) ("The amended complaint does not allege the facts supporting the plaintiffs' conclusory statements of discrimination [under the ECOA]."). Finally, the Amended

Complaint does not contain factual allegations that could show that the plaintiff was denied credit because he exercised his rights under the ECOA, which is prohibited by 15 U.S.C. § 1691(a)(3). Compare Pl. Obj. to Mot. to Dismiss (ECF No. 23) ("Pl. Objection") at 4-5 ("I was deprived of my right my to incur debt defer payments and purchase property or services. Defendants deprived me of such right by putting me through a pre-approval process, and precluded to apply because of my income") with Owens v. Magee Fin. Serv. of Bogalusa, Inc., 476 F. Supp. 758, 768 (E.D. La. 1979) (the defendant violated the ECOA by denying the plaintiff credit because the plaintiff refused to waive her "rights under the Federal Consumer Credit Protection Act, an act within the same chapter of the [ECOA].").

Because the allegations in Count I fail to state a claim upon which relief can be granted, that count is being dismissed.

**B. Count II: TILA Claim**

"The TILA was enacted in 1968 to 'protect consumers against inaccurate and unfair credit billing and credit card practices' and promote 'the informed use of credit' by 'assuring a meaningful disclosure' of credit terms.'" Strubel v. Comenity Bank, 842 F.3d 181, 186 (2d Cir. 2016) (citation omitted). "TILA imposes mandatory disclosure requirements on certain credit and loan transactions and additionally creates a private right of action for damages for violations of its provisions." Edwards v.

McMillen Cap., LLC, 574 F. Supp. 3d 52, 66 (D. Conn. 2021). "In general, TILA requires creditors to provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information." Midouin v. Downey Sav. & Loan Ass'n, F.A., 834 F. Supp. 2d 95, 102 (E.D.N.Y. 2011) (citing 15 U.S.C. § 1632).

The act provides, in relevant part, that "a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction" certain kinds of "information". 15 U.S.C. § 1631(a). With respect to "open end consumer credit plans,"[2] such as the credit cards for which plaintiff sought approval to apply, the TILA obligates creditors, "[b]efore opening any account under an open end consumer credit plan," to "disclose to the person to whom credit is to be extended" certain information, including the "conditions under which a finance charge may be imposed," the "method of determining the amount of the finance charge", and "other charges which may be imposed as part of the plan". 15 U.S.C. § 1637(a).

---

[2] The act defines open end credit plans as plans "under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j).

Here, the plaintiff claims that "[w]hen [he] attempted to apply for open-end consumer credit plans, Capital One did not disclose the terms and conditions of these credit products, thus depriving [the plaintiff] of the chance to make an informed decision." Am. Compl. at 12 (Ex. B). As a result, the plaintiff "was unable to evaluate or compare the credit terms of various plans."[3] Id. However, 15 U.S.C. § 1637(a) provides that creditors must provide certain disclosures at some point "[b]efore" a debtor "open[s] any account under an open end consumer credit plan". The act does not require disclosures of credit terms at the pre-approval stage or even at the application stage. See Strubel, 842 F.3d at 190 ("These procedures afford such protection by requiring a creditor to notify a consumer, <u>at the time he opens a credit account</u>, of how the consumer's own actions can affect his rights with respect to credit

---

[3] The plaintiff's submissions, construed liberally, seem to refer to and rely on cases that describe the purpose of the TILA to support the plaintiff's contention that he was entitled at an earlier stage "to compare and understand the credit options available to [him]". Pl. Objection at 3, 7, 12. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) ("[T]he declared purpose of the Act is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . .'"). To the extent the plaintiff relies on Beach, 523 U.S. at 412-13, that case is not on point because it involved a mortgage transaction into which the plaintiffs actually entered, rather than a potential credit transaction for which the plaintiffs were denied the opportunity to apply.

transactions." (emphasis added)).

Moreover, the Amended Complaint does not allege that the defendants ever extended credit to the plaintiff under an open end consumer credit plan or otherwise. Therefore, the plaintiff could not have been injured by any failure to make a disclosure. See, e.g., Dabydeen v. Wells Fargo Bank, N.A., No. 18-cv-3396 (KAM), 2018 WL 3212421, at *4 (E.D.N.Y. June 29, 2018) (dismissing TILA claim where the plaintiff "assert[ed] that he 'never borrowed or took a mortgage' from any defendant", from which "it necessarily follows that no defendant could have failed to provide 'clear, conspicuous and accurate disclosures of . . . loan terms' to plaintiff."). Cf. Strubel, 842 F.3d at 191 (to satisfy "the legal-interest requirement of injury in fact" for purposes of demonstrating standing under Article III, a plaintiff bringing a claim under the TILA must allege he or she was "a person to whom credit is [or was] being extended").

Because the allegations in Count II fail to state a claim upon which relief can be granted, that count is being dismissed.

**IV. CONCLUSION**

For the reasons set forth above, the defendants' Motion to Dismiss the Amended Complaint (ECF No. 18) is hereby GRANTED. Any Second Amended Complaint must be filed within 30 days of the date of this order. In any Second Amended Complaint, the plaintiff shall remedy the deficiencies identified in this

ruling and plead factual allegations that establish each element of any cause of action. This includes facts showing that each defendant named in a cause of action is a creditor as defined in the relevant statutory provision.

    It is so ordered.

    Dated this 14th day of April 2025, at Hartford, Connecticut.

      /s/ AWT      
Alvin W. Thompson
United States District Judge
